### The Mary E. Long.[*]

*(District Court, E. D. Pennsylvania. May 10, 1881.)*

1. SALVAGE — TOWING VESSEL OFF OF SHOAL — WHAT COMPENSATION AWARDED.

A schooner valued at $6,000, with a cargo and freight valued at $20,000, ran aground upon a shoal in Delaware bay, and set a signal of distress. A tug valued at $18,000, towing another vessel up the bay, saw the signal, anchored her tow, and went to the relief of the schooner, which she succeeded in pulling off the shoal and taking to Philadelphia. There was conflicting testimony as to the condition of the wind and sea, whether the schooner was in serious danger, and whether the tug ran any risk in relieving her. Other relief was near, and arrived soon after the schooner was floated. In a libel by the tug for salvage, *held*, that $1,050 was, under all the circumstances, a just compensation.

In Admiralty.

Libel by the owners of the steam-tug Juno against the schooner Mary E. Long, her cargo, and freight, to recover salvage. The testimony was as follows:

About 2 o'clock A. M. on February 21, 1880, the schooner, while sailing up the Delaware bay, grounded on a long and narrow shoal called the Brandywine shoal. For the purpose of working across the shoal she kept her sails set until 5 o'clock A. M., when they were hauled down. About 7 o'clock A. M. the schooner set a signal of distress, and about 8:30 o'clock she again set her sails. About 9 o'clock the tug Juno, pro-

*Reported by Frank P. Prichard, Esq , of the Philadelphia bar.

ceeding up the bay with a schooner which she had contracted to tow to Philadelphia for $50, saw the Long's signal, and immediately anchored her tow and went to the Long's relief. The Juno furnished a hawser, and succeeded after some time in pulling the schooner off the shoal. In the meanwhile the Long's signal of distress had been reported at the Delaware breakwater, and two other tugs started for her relief, arriving, however, just as she came off the shoal. The Juno turned over her original tow to one of these tugs, and proceeded with the Long to Philadelphia. The Long was worth $6,000, her cargo $18,557, and her freight $2,232. The value of the Juno was $18,000.

### The libellants' testimony was to the effect—

That the shoal was a dangerous one, being formed of quicksand, and that other vessels grounding on it had been lost; that the Long was working down and further upon the shoal; that she was thumping upon the bottom, and would soon have bilged; that the wind was very strong; and that the sea was so high as to break over both the schooner and the tug, and to render the service of the tug very dangerous.

### The respondent's testimony was to the effect—

That the schooner was working across the shoal, and would, by the aid of her own sails, have worked off of it; that she was not thumping upon the bottom and not leaking; that she was so little injured that after discharging her cargo at Philadelphia she took a new cargo and sailed for Portland without making any repairs except caulking her tops and butts; that the wind was merely a whole-sail breeze; that the sea was not high; and that neither the Long nor the tug were in any serious danger.

*Theodore M. Etting* and *Henry R. Edmunds*, for libellant.
*James B. Roney*, for respondent.

BUTLER, D. J. The libellants are entitled to compensation as salvors. I see no room for doubt of this. The respondent was in peril. That she might possibly have escaped without asistance, is not important.

What compensation should be allowed? As in all similar cases, this question is embarrassing. While certain general rules may be appealed to for assistance, the measure of compensation must vary with the peculiar circumstances of each case. The subject is intelligently discussed in *The Stetson*, 1 Lowell, 119, where the circumstances were much like those of the case in hand. The considerations which should govern the inquiry are: What would the libellant have contracted to perform the service for,—taking the risk of failure,—and what would the respondent have contracted to pay?

This involves the danger of the service to the libellant, and the risk of declining it, to the respondent,—as the danger and risk appeared at the time. In *The Stetson*, above cited, the court awarded 5 per cent. of the property rescued. Here a similar percentage would amount to $1,300. In view of the limited extent of the danger encountered by the libellant, and the prospect of succor from other sources by the respondent, I believe $1,300 to be a larger sum than the former would have demanded, or the latter have consented to pay. I am not unmindful of what Captains Randolph and Chester say of the situation; but their statements, when compared with those of other witnesses, seem somewhat exaggerated. After careful examination of the case, I think $1,050 (one thousand and fifty dollars) a just compensation, and this sum will be awarded, with costs.